NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0135n.06

Case No. 24-1338

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 11, 2025
KELLY L. STEPHENS, Clerk

RODRIGUES TALBERT,

    Petitioner-Appellant,

v.

BRYAN MORRISON, Warden,

    Respondent-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
MICHIGAN

OPINION

Before: SILER, KETHLEDGE, and BUSH, Circuit Judges.

**SILER, Circuit Judge.** Following a bench trial, a Michigan trial court convicted Rodrigues Talbert of first-degree felony murder for his involvement in the 2006 robbery and killing of Corey Phillips at a drug house in Detroit. Talbert later learned that the state failed to disclose evidence that would impeach an eyewitness's testimony against him. The Michigan Court of Appeals determined that the evidence was immaterial and affirmed his conviction. Talbert petitioned for habeas relief under 28 U.S.C. § 2254, which the district court denied on the same ground, but it granted a certificate of appealability. We affirm.

**I.**

In February 2006, Corey Phillips and his girlfriend, Nicole Vaid, drove from Kalamazoo, Michigan, to a house on Saint Marys Street in Detroit. Phillips parked the car across the street, placed a brief phone call, then grabbed a duffel bag or backpack of marijuana from the backseat and entered the house alone. Vaid, who had stayed in the car, heard gunshots coming from the house and saw two men run out, one of whom was carrying a long object that she thought looked

like a gun. The men got into a car parked in the driveway and left. Vaid entered the house to check on Phillips and found him dead from multiple gunshot wounds but did not see the bag of marijuana. Police responded to the scene, where they collected samples of smeared, bright red blood on the front door and the microwave in the kitchen.

A week later, Vaid identified Harold Walton out of a photo lineup as one of the men she saw running from the house. The other man remained unidentified for almost a decade until police collected Talbert's DNA. His DNA matched the blood found on the microwave and front door, despite his insistence that he had never been to the house. In April 2016, Vaid identified Talbert out of a live lineup as the other man who fled from the house in February 2006. She confirmed the identification at a preliminary examination the next day.

Talbert was charged with first-degree felony murder and stood trial in December 2016. He chose a bench trial, at which Vaid testified. She explained what she saw in February 2006—that Phillips entered the house with marijuana in a bag, she heard gunshots, then two men ran out. She claimed that she only saw their faces for a second and could not describe them in detail, like whether they had facial hair, whether they had glasses, what build they were, or which of them was carrying the gun-like object. But Vaid again identified Talbert, explaining that she could do so after so many years because there "are just some things you never forget. And when I saw his face[,] I remembered it."

At trial, the parties learned that Walton, whom Vaid identified in 2006, had been charged, although his case was ultimately dismissed. Walton's file, which was not recovered until after Talbert's sentencing, included a transcript of his preliminary examination, at which Vaid testified. Vaid's 2006 preliminary-examination testimony was somewhat different from her 2016 trial testimony. In 2006, Vaid testified that she could not see the face of the man she later identified as

2

Talbert. She also testified that she and Phillips had gone to the house in Detroit to visit a friend and that she did not see if Phillips grabbed anything from the backseat. But in 2016, she claimed that Phillips took a duffel bag or backpack of marijuana into the house.

Talbert's defense was that he was present at the house during the shooting and ran out of the house, but he was a victim, not a participant. He submitted evidence that he sustained gunshot wounds the day Phillips was shot. Talbert sought treatment for his wounds under the name Kenneth Brown, telling hospital staff that he and his cousin were traveling from Cleveland to Detroit when they stopped at a gas station where two men tried to carjack them and shot him twice. An officer spoke to him, but before the officer could confirm the story or collect contact information, he fled.

The trial court found that Talbert participated in the robbery and murder of Phillips and convicted Talbert of first-degree felony murder. Talbert appealed, arguing that Vaid's withheld prior testimony was a *Brady* violation. *People v. Talbert*, No. 336843, 2019 WL 1370677, at *5 (Mich. Ct. App. Mar. 26, 2019) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). The Michigan Court of Appeals disagreed and affirmed the conviction, reasoning that the prior testimony was immaterial because of the other evidence connecting Talbert to the scene at the time of the shooting and his defense. *Id.* at *5. The Michigan Supreme Court declined to hear the case. *People v. Talbert*, 504 Mich. 973, 933 N.W.2d 278 (2019).

In 2020, Talbert petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition, also holding that the evidence was immaterial, but it issued a certificate of appealability. *Talbert v. Morrison*, No. 20-12853, 2024 WL 1354312, at *5–6 (E.D. Mich. Mar. 29, 2024). Talbert appeals the denial.

**II.**

The *Brady* rule requires the prosecution to disclose favorable evidence to an accused regardless of whether the accused requests it or whether it is exculpatory or impeachment evidence. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citations omitted). Success on a *Brady* claim requires proof that "(1) the prosecutor suppressed evidence, (2) the evidence is 'favorable' to the defense, and (3) the evidence is 'material' to the case." *Mack v. Bradshaw*, 88 F.4th 1147, 1154 (6th Cir. 2023) (citing *Brady*, 373 U.S. at 87). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). Put differently, the question is whether without the suppressed evidence, the accused "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* at 434.

Where, as here, a state court adjudicated the petitioner's claims on the merits, a petition for a writ of habeas corpus can be granted only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (AEDPA). When AEDPA combines with *Brady*, rather than assessing for ourselves whether the verdict was worthy of confidence, we ask whether "any fairminded judge could agree with the state court's *Brady* assessment." *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1103 (6th Cir. 2022).

**III.**

Talbert's sole claim is that he is entitled to habeas relief because Vaid's withheld prior testimony was material to his case. The Michigan Court of Appeals, the last state court to consider his claim on the merits, reasoned that Vaid's inability to identify Talbert in 2006 was immaterial because Talbert did not argue that he would have presented a different defense theory had he known of the suppressed evidence, and the additional evidence connecting him to the crime was substantial. *Talbert*, 2019 WL 1370677, at *6. A fair-minded judge could agree with the court's assessment. *See Chinn*, 24 F.4th at 1103.

Although Vaid testified in 2006 that she did not see the face of the man she identified as Talbert in 2016, DNA evidence from fresh blood placed him at the scene at the time of the shooting. His defense counsel also acknowledged that Talbert was there and that Talbert ran from the house after the gunfire. The corroborating evidence thus "undermined . . . any impeachment value of the [withheld] evidence." *McNeill v. Bagley*, 10 F.4th 588, 604 (6th Cir. 2021) (alteration in original) (quoting *Hutchison v. Bell*, 303 F.3d 720, 745 (6th Cir. 2002)). And Talbert's defense counsel extensively cross-examined Vaid on the reliability of her eyewitness testimony based on the distance from which she saw the men, the short amount of time she saw them, and her inability to describe their appearances in detail, even shortly after the crime. *See id.* (holding that an eyewitness's initial inability to identify the petitioner in a photo lineup was immaterial because the eyewitness was cross-examined on his ability to recognize the petitioner and it was not the only evidence connecting the petitioner to the crime).

Vaid's inconsistent testimony about the marijuana is likewise immaterial. In 2006, she testified that she and Phillips were visiting a friend, and that she did not see if Phillips grabbed anything from the back seat, while in 2016, she testified about the duffel bag or backpack of

marijuana that Phillips took into the house. But Talbert's trial counsel repeatedly impeached her with statements she made to police after the shooting, where she lied about Phillips selling drugs and taking a bag of marijuana into the house. Because she was impeached on the same subject as the withheld 2006 testimony, it is immaterial. *Brooks v. Tennessee*, 626 F.3d 878, 893 (6th Cir. 2010) ("Evidence that is 'merely cumulative' to evidence presented at trial is 'not material for purposes of *Brady* analysis.'") (quoting *Carter v. Mitchell*, 443 F.3d 517, 533 n.7 (6th Cir. 2006)).

Talbert argues that the inconsistencies are material because, considered together, they would have proven that Vaid, the prosecution's key witness, was unreliable and biased. We disagree. Vaid was "amply impeached at trial" about the reliability of her eyewitness testimony, her motive to lie to avenge her boyfriend, and how she could have falsely identified Talbert. *See Montgomery v. Bobby*, 654 F.3d 668, 682 (6th Cir. 2011) (additional impeachment evidence immaterial where other evidence impeached the witness's motive and credibility).

As explained above, Vaid's testimony was not the only piece of evidence connecting Talbert to the crime. *Montgomery*, 654 F.3d at 679 ("[A] reviewing court [must] consider the totality of the evidence—and not merely exculpatory facts in isolation—when evaluating a claim of error for its prejudicial effect."). Talbert's DNA was found in fresh blood at the crime scene, he admitted through counsel to being there at the time of the shooting and running out afterward, he lied to police and said he had never been to the house on Saint Marys and that the blood was not his, and he fled the hospital when police began questioning him about the gunshot wounds he sustained on the day of the shooting. *Cf. Harris v. Lafler*, 553 F.3d 1028, 1033 (6th Cir. 2009) (holding that withheld inconsistent statements of eyewitness were material because there was no physical evidence and nothing else connecting the accused to the crime).

Considering the other evidence against him, Vaid's inconsistencies, which were corroborated or cumulative, do not "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435; *see Mack*, 88 F.4th at 1158 (withheld evidence immaterial because it was weak, mostly cumulative, and failed to "undercut" the accused's presence at the crime scene and his "inconsistent and unsatisfying explanations" for the physical evidence). That Talbert "may have made different strategy decisions"—like not choosing a bench trial nor allowing Vaid to testify over video—does not make the evidence material. *United States v. Kemp*, 732 F. App'x 368, 376 (6th Cir. 2018) ("Materiality pertains to the issue of guilt or innocence, and not to a defendant's ability to prepare for trial.") (quoting *United States v. Bencs*, 28 F.3d 555, 560 (6th Cir. 1994)).

Finally, Talbert faults the Michigan Court of Appeals for ignoring his evidence that eyewitness testimony is unreliable and relying too much on his false exculpatory statement that he was never at the house on Saint Marys. But "a state court need not make detailed findings addressing all the evidence before it." *Fry v. Shoop*, 124 F.4th 1019, 1024 (6th Cir. 2025) (internal quotation marks omitted) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 347 (2003)). And while the Michigan Court of Appeals did consider his false exculpatory statements, which are admissible, *Martin v. Foltz*, 773 F.2d 711, 720 (6th Cir. 1985), *abrogated on other grounds by Merlo v. Bolden*, 801 F.2d 252 (6th Cir. 1986), that is not all it considered. *See Talbert*, 2019 WL 1370677, at *5–6.

## IV.

For the reasons above, we affirm the district court's denial of Talbert's habeas petition.